# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| AIDA COTO ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL NO. 2005-191 |
| v. ) | |
| ) | |
| HYANNIS AIR SERVICE, INC. d/b/a ) | |
| CAPE AIR ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION

FINCH, J.

THIS MATTER comes before the Court on a Motion for Summary Judgment filed by Defendant Hyannis Air Services, Inc. d/b/a Cape Air. Plaintiff Aida Coto opposes such motion. After careful consideration and upon review of the briefs submitted by the parties, the Court issues the following ruling.

## I. BACKGROUND

Plaintiff was a passenger on Defendant's Cape Air airplane and, on or about November 15, 2005, she fell on the plane's stairs while attempting to disembark from the aircraft in heavy rain at the airport in St. Croix. Cape Air is a commercial airline offering service in the U.S. Virgin Islands and Puerto Rico, among other locations. Plaintiff has filed this action against Defendant alleging that Defendant breached its duty to Plaintiff and caused Plaintiff's accident by its negligence in failing to (1) maintain the stairs of Defendant's aircraft in a safe and reliable condition, (2) warn passengers of the slippery and dangerous condition of the steps, and (3) assist Plaintiff while deplaning in heavy rain. Complaint ¶ 7.

As an experienced traveler, Plaintiff often visits San Juan, Puerto Rico for regular checkups with her doctor and to accompany her son for medical visits. Plaintiff testified that she has flown on Cape Air previously, "maybe" more than ten times. Coto Dep. 22:21, Feb. 6, 2007. As such, Plaintiff was familiar with Cape Air's aircraft and its steps, as it operates only one model of plane in the Caribbean. Defendant flies small planes that hold up to nine passengers who enter and exit the plane using steps that are built into the back of the planes' doors. When the door is opened and lowered, it serves as the stairway to the plane. Hammond Dep. 9:20-22, Feb. 28, 2007. On November 15, 2005, after completing her regular visit to San Juan, Plaintiff returned to St. Croix on Cape Air Flight 1275. Throughout the entire flight and during deplaning, Plaintiff was aware that it was raining. Coto Dep. 30:9. When the aircraft arrived in St. Croix, it came to a stop and parked at a well-illuminated area near the covered terminal building. Coto Dep. 24:21-23. Plaintiff saw the rain outside and noticed that the stairs were wet before she took her first step. Coto Dep. 25:1-3, 30:5-31:10.

Cape Air's customer service agent Duane Hammond met the flight, opened the aircraft, and lowered the cabin steps so that passengers could exit. Hammond testified that, as Plaintiff was disembarking, she told Hammond that she recently had surgery and needed help down the stairs. Hammond Dep. 15:6-10. Hammond claims that he put out his hand to assist Plaintiff in deplaning the aircraft but, rather than taking his hand, Plaintiff held onto the chains along the sides of the steps. Hammond Dep. 15:10-12. Plaintiff described the occurrence of her fall, stating: "I held onto the chains to get up. When I made the move to get up, I felt that the step went down some. And when I went to put my left foot on to go down, I slid, I fell, I fell face forward, my two knees on the ground, and I broke the fall with my two hands." Coto Dep. 19:23-20:2. The seam at the back of the right heel of her shoe broke at some point during

2

Plaintiff's fall. Coto Dep. 25:23-24. Plaintiff subsequently threw away her broken shoe. Coto Dep. 25:19-22. Hammond remembers that Plaintiff was wearing high-heeled shoes at the time of her fall while Plaintiff insists that she was wearing low-heeled shoes. Hammond Dep. 15:12-13; Coto Dep. 25:7.

Defendant states that it performed all preventative inspections and maintenance required by federal law and Federal Aviation Administration regulations with respect to the aircraft at issue in this case. Plaintiff contends that there is evidence that Defendant failed to repair a tear in the carpet on the first step of the plane in question in July 2005, three months before Plaintiff's accident. Plaintiff's husband, Jose Coto, photographed the step upon which Plaintiff slipped and the photograph shows a small tear in the carpet on the step. See Pl.'s Ex. 2. Jose Coto claims that he took the photograph several days after Plaintiff's accident. Although Defendant's maintenance records for the six month period before Plaintiff's fall do not by themselves indicate any maintenance failures or oversights that could have contributed to Plaintiff's fall, Plaintiff maintains that the photograph is evidence that Defendant failed to adequately repair the carpet in July 2005.

After viewing the photograph, Defendant's Maintenance Manager Edward Zeglen testified that he saw no problem with the step. Zeglen Dep. 77:18-78:5, May 11, 2007. When shown the same photograph, Defendant's Director of Safety Craig Stewart stated that the stair was not unsafe and would not cause him any particular concern. Stewart Dep. 61:18-62:6, June 27, 2007.

Due to her fall, Plaintiff claims that she suffered injuries to her right knee, arms and back. Plaintiff alleges that she has suffered great pain of body and mind, mental anguish, loss of

3

enjoyment of life, medical expenses, lost income, lost future earnings capacity, and was prevented from otherwise transacting her business.  Complaint ¶ 8.

## II.     STANDARD OF REVIEW

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  Id. at 247-48.  The moving party has the burden of proving that there is no material issue of fact in dispute and, once the moving party has carried its burden, the nonmoving party must produce sufficient evidence that will reasonably support a jury verdict in its favor and not just "some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  In analyzing this motion for summary judgment, this Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

## II.     STANDARD OF CARE

Plaintiff's primary theory is that Defendant breached a duty owed to its passengers

to insure that passengers are able to exit the plane in a reasonable and safe manner.  Defendant argues that Plaintiff is unable to cite any federal standard for safety that Defendant breached.  Reply to Opp. At 9.

The Federal Aviation Act of 1958, Pub.L. No. 85-726, 72 Stat.731 (codified as amended at 49 U.S.C. § 40101) ("FAA") is central to this case.  As indicated by the legislative history of the FAA, one of its purposes is to "rest sole responsibility for supervising the aviation industry with the federal government." Abdullah v. American Airlines, Inc., 181 F.3d 363, 368 (3d Cir.1999) (citing S.Rep. No. 1811, 85th Cong., 2d Sess., 5 (1958)).  Despite finding that the FAA preempts state standards of care, Abdullah held that the FAA could coexist with state damage remedies without impairing the federal regulatory scheme.  Id. at 375-76.  Therefore, a plaintiff can potentially recover under state and territorial remedial schemes.  See Shupert v. Continental Airlines, Inc., 2004 WL 784859, *6 (S.D.N.Y.).  To prevail on a territorial tort claim, a plaintiff must prove that an act or omission of the airline constitutes a violation of a federal standard of care for air safety.

Federal control of aviation is exercised through a series of regulations promulgated under the FAA and codified in Title 14 of the Code of Federal Regulations.  49 U.S.C. § 40113.  In relevant part, 14 C.F.R. §382.40 (c)(5) states that, "boarding assistance shall be provided by any available means to which the passenger consents, except hand-carrying as defined in §382.40 (a)(2)."  14 C.F.R. §382.40 (d)(2) states that, "Carriers who do not operate aircraft with more than a 19-seat capacity shall ensure that those personnel involved in providing boarding assistance are trained to proficiency in the use of the boarding assistance equipment used by the

5

carrier and appropriate boarding assistance procedures that safeguard the safety and dignity of passengers."

In relevant part, 14 C.F.R. § 382.33 states that "a carrier shall not require a qualified individual with a disability to provide advance notice of his or her intention to travel or of his or her disability as a condition of receiving transportation or of receiving services or accommodations required by this part." 14 C.F.R. § 382.23, which applies to all terminal facilities and services owned, leased, or operated on any basis by an air carrier at a commercial service airport, states that "Air carriers shall ensure that the terminal facilities and services subject to this section shall be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." "Individual with a disability means any individual who has a physical or mental impairment that, on a permanent or temporary basis, substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment." 14 C.F.R. § 382.5

The FAA authorizes the Administrator to "prescribe minimum safety standards." 49 U.S.C . § 44701(b). In prescribing these standards, the Administrator has promulgated a general standard of care: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." 14 C.F.R. § 91.13 (2004). Even in the absence of a more specific regulation covering the subject matter, aircraft activities must comply with this basic requirement. "[I]n determining the standards of care in an aviation negligence action, a court must refer not only to specific regulations but also to the overall concept that aircrafts may not be operated in a careless or reckless manner." Abdullah, 181 F.3d at 371.

**III.   DISCUSSION**

   *A.   Defendant's Failure to Maintain the Stairs in a Safe Condition*

Plaintiff argues that Defendant was negligent for failing to repair a tear in the carpet on the first step of the aircraft. An Aircraft Discrepancy Sheet dated July 30, 2005 lists discrepancies on the left side of the sheet and corrective actions on the right side of the sheet. See Pl.'s Ex. 2. Item 17 on the sheet says "Trim around upper cabin door step coming off" and the corrective action shown to the right says "Replaced missing screw IAW [in accordance with] Cessna 402C maintenance manual ch. 52." Plaintiff avers that, given the maintenance record and Jose Coto's photograph showing a small tear in the carpet on the top step, a reasonable jury could find that the tear was not repaired in July and existed when Plaintiff fell. Opp. at 4.

Defendant insists that Plaintiff has not introduced any evidence that Defendant had actual or constructive knowledge of any hazardous condition with respect to its aircraft steps and there is no evidence that the carpet was torn at the time Plaintiff fell. Reply to Opp. at 12. Looking at the airplane maintenance records, Defendant argues that the Discrepancy Sheet clearly shows that the aircraft's first step was seen by the mechanic and fixed. Defendant asserts that the maintenance record on which Plaintiff relies in no way supports Plaintiff's conclusion that the carpet on the first step was not repaired at the time of her accident. Reply to Opp. at 13.

The parties disagree as to whether or not Defendant performed all preventative inspections and maintenance required by federal law and FAA regulations with respect to the aircraft at issue in this case. Id. Plaintiff argues that there is evidence that Defendant failed to repair a tear in the carpet on the first step of the plane while Defendant contends that the Aircraft

7

Discrepancy Sheet makes it clear that the carpet was repaired. There is also a question of whether the photograph showing a loose carpet thread accurately depicts the step on the night of the accident. Id. at 11. Furthermore, there is a dispute as to whether or not the post-incident photograph of the step showed the step to be unsafe. Id. Because material issues of fact remain for consideration by a jury, summary judgment is denied as to Plaintiff's claim against Defendant for failure to maintain the stairs in a safe condition.

### B. *Defendant's Failure to Warn Passengers of the Wet Conditions*

Defendant claims that the slippery steps were an open and obvious condition based on the fact that it had been raining for some time and continued to rain heavily as the passengers on Defendant's aircraft disembarked. Plaintiff herself testified that "it was raining throughout the whole trip." Coto Dep. 30:9. Plaintiff was aware of the fact that it was raining while the plane was landing and as the passengers were deplaning. Id. Before Plaintiff stepped onto the first step of the stairs exiting the plane, she saw that the stairs were wet and took extra care due to the slippery conditions. Coto Dep. 31:4-10.

> Q: Did seeing that the stairs were wet cause you to do anything to take any extra care in exiting the aircraft?
>
> A: Yes.
>
> Q: Okay. Tell me what extra care you took in exiting the aircraft because the stairs were wet.
>
> A: Well, I held onto the chains at the very top.

Coto Dep. 31:16-22.

Because there is no dispute that Plaintiff knew it was raining, knew the stairs were wet and saw the wet stairs clearly in a well-illuminated area, Defendant's failure to warn Plaintiff of

the obviously wet and slippery conditions, without more, is insufficient to establish that Defendant was negligent. Wet stairs, as a result of rainy weather, cannot be considered a condition that requires warning. "If a danger is so apparent the invitee can be expected to notice and protect against it, the condition itself constitutes adequate warning." Niblett v. Pennsylvania R. Co., 158 A.2d 580, 582 (Del. Super. 1960); see also Hammer v. Acad. Bus Tours, Inc., 2001 U.S. Dist. LEXIS 17931 (S.D.N.Y. 2001) (finding defendant bus company was not negligent since "the wet stairs were the result of the weather conditions outside at the time of the accident"); Dickerson v. Guest Servs. Co. of Va., 281 Ga. App. 387, 389 (Ga. Ct. App. 2006) ("because a wet step on a rainy day presents a reasonable risk which all may anticipate, [defendant] breached no legal duty owed to [plaintiff]"); Shorts v. New Orleans Public Service, Inc., 522 So. 2d 1265, 1266 (La. Ct. App. 1988) ("there is no breach of duty by the defendant when the passenger's injury was caused by the ordinary wet condition of the bus floor on a rainy day").

In Hess v. United States, 666 F.Supp. 666, 672 (D. Del. 1987), the plaintiff was injured when she slipped and fell on the wet floor in the lobby of the defendant's post office. The plaintiff argued that the defendant's premises were unreasonably dangerous on the day of the plaintiff's accident because there were no signs warning of the slippery condition of the floor. Id. The Hess court explained that, "if the 2.0 to 2.4 inches of rain that fell that day was insufficient to put [plaintiff] on notice that well traveled entranceways such as the outer lobby of the Post Office would be somewhat wet, it is doubtful that a 'wet floor' sign would have served that purpose. A sign is of great use when a floor is slippery due to some unexpected or hidden condition, such as a grease spill or a wet-mopping operation. But when an entranceway is wet due to rain, a sign is superfluous." Id.

In the present case, Defendant did not breach any legal duty owed to Plaintiff by failing to warn her that the aircraft steps were wet, as the rainy condition itself served as an adequate warning. "There is no duty upon the owner to warn an invitee of a dangerous condition which is obvious to a person of ordinary care and prudence." Niblett, 158 A.2d at 582. Therefore, the Court grants summary judgment dismissing any negligence claims arising from Defendant's purported failure to warn Plaintiff of the wet steps.

### C.    *Defendant's Failure to Assist Plaintiff*

Plaintiff informs us that "the negligence here was Cape Air's failure to assist Aida Coto down the steps of its plane in the heavy rain when it knew that Aida recently had surgery and needed help." Opp. at 1. Hammond testified that, as Plaintiff was disembarking, she told Hammond that she recently had surgery and needed help down the stairs but, when he put his hand out to assist Plaintiff, she did not take hold of it. Hammond Dep. 15:6-10. Plaintiff argues that Hammond's failure to assist Plaintiff down the airplane's steps violated Cape Air's own safety standards requiring Hammond to "provide special assistance to passengers with special needs." Pl.'s Ex. 2.

Citing Hammond's deposition, Defendant insists that Plaintiff did not speak to Hammond until after she fell and Plaintiff did not request assistance from Hammond. When questioned whether she asked for Hammond's assistance while disembarking from the aircraft, Plaintiff answered, "No. No, I did not, because he was on the right side of the aircraft with umbrellas and his hands were full." Coto Dep. 109:21-24. Plaintiff testified that she first spoke with Hammond after the accident. Coto Dep. 36:17-23.

There is a dispute as to two material facts: (1) if and when Plaintiff asked for special assistance to exit Defendant's aircraft and (2) whether Hammond offered his hand to help

Plaintiff disembark from the plane. In light of the lack of clarity with regard to these two questions and drawing all reasonable inferences in favor of Plaintiff, the Court finds that the evidence is such that a reasonable jury could return a verdict for the Plaintiff. Therefore, summary judgment is denied as to Plaintiff's claim against Defendant for failure to assist.

## IV.	CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **DENIED** as to Plaintiff's claim for Defendant's failure to maintain the stairs in a safe condition, **DENIED** as to Plaintiff's claim for Defendant's failure to assist, and **GRANTED** as to Plaintiff's claim for Defendant's failure to warn Plaintiff of the wet steps.

**ENTERED this 31 day of January, 2008.**

　　　　　　　　　　　　　　　　　　　/s/
**HONORABLE RAYMOND L. FINCH
U.S. DISTRICT JUDGE**